**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **SHARON ROBERTS,** | **Civil Action No. 14-cv-00442** |
| **Plaintiff,** | **Judge Joan Gottschall** |
| **v.** | |
| **ADVOCATE HEALTH CARE,** | |
| **Defendant.** | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**<u>MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff offers nothing beyond her own implausible conclusions and excuses to support her claims of any alleged uncompensated work. Notably, she admits that Defendant Advocate paid her for all work she actually **recorded**. (Facts ¶ 23, 78; Ex. A/Roberts Dep. 51:7-17, 52:8-15, 58:21-59:5; 60:15-20, 60:7-10, 104:10-16.) She admits that, in addition to punching in and out at the beginning and end of her shift, she knew how to and in fact did request adjustments to her time records when they did not accurately represent her time and then got paid. (Facts ¶¶ 22, 23, 34, 36; Ex. A/Roberts Dep. 44:10-19, 45:15-18, 50:4-10, 65:18-66:1, 66:7-17, 67:5-19; Ex. F/Roberts Dep. Ex. 2.) She admits that she knew how to record a "no lunch" when she missed her meal period or it was interrupted and was paid when she did. (Facts ¶ 22, 23; Ex. A/Roberts Dep. 44:10-19; 45:15-18, 50:4-10, 51:7-17.) She admits that she held a leadership position in which she, among other roles, corrected her employees' time records if an employee incorrectly clocked in or out. (Facts ¶ 11, 12; Ex. A/Roberts Dep. 130:1-21, 131:18-24; 132:23-133:9; Ex. I/Roberts Dep. Ex. 13.) In fact, during the approximately two-year limitations period of this lawsuit, Plaintiff herself recorded 331 hours of paid overtime – often recording 40 hours of straight time, 15-25 hours of on-call time and 3-5 hours of overtime in a given workweek -- and **Plaintiff admits Advocate properly paid for her for all of that time**. (Facts ¶¶ 19, 23, 25, 26, 27, 28, 31, 36, 78; Ex. A/Roberts Dep. 12:2-5, 13:10-15, 51:7-17, 52:8-15, 58:21-59:5, 60:15-20, 60:7-10, 76:1-13, 80:6-81:6; 104:10-16; Ex. D/Maguruny Decl. Ex. 1.) But, despite these fatal admissions, Plaintiff somehow senselessly contends she failed to be paid for or even record an additional 8 to 12 hours of overtime each week – time she cannot even remember but is roughly estimating -- because she "forgot" or was "busy." (Facts ¶¶ 34, 41, 42, 43, 70, 71, 74; Ex. A/Roberts Dep. 7:19-23, 8:8-9:8, 10:10-23, 11:4-12, 48:14-23, 950:11-21, 51:18-52:7, 52:19-53:2, 63:13-64:12, 84:8-18, 107:1-78:5-79:5.) Having **forgot** to record the additional time not

only is implausible but, even if true, as a matter of law cannot be grounds for a lawsuit under the Fair Labor Standards Act or Illinois Minimum Wage Law. Additionally, Plaintiff's belated claim of uncompensated off-the-clock work fails as a matter of law because she admitted that she never told her manager or anyone at Advocate she was working before or after her shift or at lunch or that her time records were incorrect. (Facts ¶ 44, 77; Ex. A/Roberts Dep. 63:4-6; 64:10-21, 128:13-19.) The law requires that an employee notify her employer of any unpaid overtime work. *See Gaines v. K-Five Consr. Corp.*, 742 F.3d 256, 271 (7th Cir. 2014). Plaintiff though admits she "never complained to any supervisor, manager or person in HR" about the time she is claiming in this case. (Facts ¶ 44; Ex. A/Roberts Dep. 128:13-19.) For this reason as well, this Court should enter judgment for Advocate.

## BACKGROUND

Plaintiff worked in the Cardiac Catheterization Lab ("Cath Lab") at Advocate Illinois Masonic Medical Center ("AIMMC") from September 21, 2009 to March 22, 2013. (Facts ¶ 4; Ex. A/Roberts Dep. 5:17-6:5; 59:6-10.) The Cath Lab is a unit that performs scheduled and emergency cardiac interventions and diagnostic procedures. (Facts ¶ 7; Ex. B/Magurany Dep. 17:19-24; 18:5-13; 29:23-30:9; Ex. C/Kittle Dep. 31:4-12.) Plaintiff worked as a Clinical Team Lead registered nurse and in addition to her clinical duties, was responsible for day to day operations in the Cath Lab. (Facts ¶ 8, Ex. B/Magurany Dep. 18:14-21.) For example, Plaintiff balanced schedules and lunch breaks so that the Cath Lab always had appropriate staffing. (Facts ¶ 9, 10; Ex. A/Roberts Dep. 38:7-16, 39:18-23, 40:3-7.) In addition, Plaintiff could add time to an employee's record if, for example, the employee incorrectly clocked in or out, to ensure employees were properly paid for their time. (Facts ¶ 11, 12; Ex. A/Roberts Dep. 131:18-24; 132:23-133:9; Ex. H/Roberts Dep. Ex. 13.)

CHI-1941738v4

The Cath Lab hours are 6:30 a.m. to 5:00 p.m. Monday through Friday, and Plaintiff was usually scheduled 7:00 a.m. to 3:30 p.m, five days a week.  (Facts ¶¶ 18, 19; Ex. A/Roberts Dep. 13:10-15; Ex. C/Kittle Dep. 77:1-5.)  Plaintiff also rotated for on-call shifts in the evenings and on weekends.  (Facts ¶ 19; Ex. A/Roberts Dep. 93:3-24, 94:13-19; Ex. H/Roberts Dep. Ex. 5.)  She also occasionally picked up extra shifts in the Pediatrics Unit.  (Facts ¶ 19; Ex. A/Roberts Dep. 139:8-14, 140:5-22; Ex. J/Roberts Dep. Ex. 14.)  Plaintiff worked a significant amount of overtime throughout her employment, for which Advocate paid her at an overtime rate.  (Facts ¶¶ 25, 26, 27, 28, 29, 30; Ex. A/Roberts Dep. 12:2-5; Ex. D/Magurany Decl. Ex. 1, Plaintiff's Pay Stubs.)  In total over the statutory period, Plaintiff worked and was paid at an overtime rate for 331.74 hours of overtime.  (Facts ¶ 26; Ex. D/Magurany Decl. Ex. 1, Plaintiff's Pay Stubs.)  Plaintiff worked and was paid for overtime in 70 of the 113 weeks in the statutory period.  (Facts ¶ 30; Ex. D/Magurany Decl. Ex. 1.)  In 19 weeks, Plaintiff worked in excess of six hours of overtime, including multiple weeks where she was paid for as much as 10-13 hours of overtime.  (Facts ¶ 27; Ex. D/Magurany Decl. Ex. 1.)  In 33 weeks, Plaintiff worked between two and six hours of overtime.  (Facts ¶ 28; Ex. D/Magurany Decl. Ex. 1.)  Plaintiff also often recorded on-call time of 15-25 hours in a week.  (Facts ¶ 19; Ex. D/Magurany Decl. Ex. 1.)

Advocate provided Plaintiff with a pager to use during her shifts at the hospital and while on-call.  (Facts ¶ 13; Ex. A/Roberts Dep. 102:17-19; Ex. B/Magurany Dep. 26:12-17.)  Pagers provide immediate notification of cardiac emergencies to Cath Lab employees while they are on shift or on-call.  (Facts ¶ 13; Ex. B/Magurany Dep. 27:17-28:15; Ex. C/Kittle Dep. 31:1-12.)  Cath Lab employees are not expected to respond to pages unless they are on shift or on-call.  (Facts ¶ 16; Ex. B/Magurany Dep. 50:21-51:5, 85:9-22, 159:16-24.)  Cath Lab employees also are not expected to respond to non-emergent pages when they are at lunch.  (Facts ¶ 15; Ex.

B/Magurany Dep. 35:11-17; Ex. C/Kittle Dep. 47:20-24.)  Employees in the Cath Lab, including Plaintiff, are directed to hand off their duties and patient care responsibilities to other employees during their lunch breaks.  (Facts ¶ 24; Ex. B/Magurany Dep. 43:19-44:22.)

Plaintiff was required to punch in before starting work, and punch out at the end of her shift to record all hours worked.  (Facts ¶ 32; Ex. A/Roberts Dep. 45:19-46:4.)  If Plaintiff did not take a meal break or her meal break was interrupted, she had several options to ensure that she was paid for that time.  For example, she could enter a "no lunch" code when punching out for the day.  (Facts ¶ 22, 33; Ex. A/Roberts Dep. 44:10-19, 45:15-18, 64:22-65:13.)  If she forgot to enter that code on the day she missed her lunch or it was interrupted, or if her hours were not properly recorded for any other reason, Plaintiff could fill out a payroll adjustment form to correct her time.  (Facts ¶ 34; Ex. A/Roberts Dep. 65:18-66:1; Ex. B/Magurany Dep. 70:2-7, 71:4-12; Ex. C/Kittle Dep. 80:21-81:9.)  Advocate did not place any time limit on when Plaintiff could fill out a payroll adjustment form to request pay.  (Facts ¶ 35; Ex. C/Kittle Dep. 81:15-24.)  Further, Advocate advises employees to contact human resources if there are problems with their pay or lunch breaks.  (Facts ¶ 39; Ex. C/Kittle Dep. 80:21-81:14.)  Plaintiff testified that she was familiar with these policies, entered "no lunch" multiple times, submitted payroll adjustment forms, and always was paid for time she reported.  (Facts ¶¶ 23, 36, 37, 40; Ex. A/Roberts Dep. 50:4-10, 51:7-17, 52:8-15, 65:18-66:1; 66:12-21, 67:5-19, 67:20-68:2, 76:1-13.)

## ARGUMENT

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  FRCP 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *see also Mills v.*

*Health Care Serv. Corp.*, 171 F.3d 450, 458 (7th Cir. 1999). A plaintiff opposing summary judgment must present admissible evidence showing a genuine issue of material fact; a scintilla of evidence, or evidence that is not significantly probative, is insufficient. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A plaintiff "cannot rest on [her] own deposition, or self-serving affidavits, to meet [her] burden of proof," *Gilmour v. Abbott Labs.*, No. 03-C-9076, 2005 WL 947082, at *6 (N.D. Ill. Apr. 11, 2005).

## I. PLAINTIFF CANNOT PROVE SHE PERFORMED WORK FOR WHICH SHE WAS NOT COMPENSATED.

To prove a claim for unpaid wages under the FLSA or the IMWL "[t]he employee bears the burden of proving that she performed overtime work for which she was not properly compensated." *Kellar v. Summit Seating Inc.*, 664 F.3d 169, 173 (7th Cir. 2011); *see also Turner v. The Saloon Ltd.*, 595 F.3d 679, 691 (7th Cir. 2010) ("[plaintiff] has the burden of proving that he performed overtime work for which he was not properly compensated.").[1] To survive summary judgment, Plaintiff must present sufficient evidence to "create a reasonable inference that Plaintiff actually worked the claimed hours." *Vince v. Ill. Cent. Sch. Bus, LLC*, Case No. 09-cv-5360, 2011 U.S. Dist. LEXIS 12858, *34 (N.D. Ill. Feb. 9, 2011). Where an employer submits documents that contradict plaintiff's claims, "mere assertions that an employer's records are inaccurate are insufficient to create a jury issue." *Turner*, 595 F.3d at 691; *see also Golden v. World Sec. Agency, Inc.*, 884 F. Supp. 2d 675, 699 (N.D. Ill. 2012) (unsupported averments insufficient where employee required to keep time records); *Vince*, 2011 U.S. Dist. LEXIS 12858 at *33-34 (summary judgment to defendant where plaintiff failed to submit any documentary evidence, personal records, or correspondence to support her claim of overtime); *Bjornson v. Daido Metal U.S.A., Inc.*, 12 F. Supp. 2d 837, 840-42 (N.D. Ill. 1998) (summary

---

[1] Courts apply this same analysis to FLSA and IMWL claims. *See, e.g., Mitchell v. JCG Indus.*, 929 F. Supp. 2d 827 (N.D. Ill. 2013).

judgment for employer where overtime claim based only on deposition testimony, which was contradicted by employer's time records, plaintiff's contemporaneous approval of such time records, and the absence of evidence supporting plaintiff's attempted explanations).  Further, "[e]mployers have the right to require employees to keep track of their work time" and rely on the accuracy of those records.  *Schremp v. Langlade County*, Case No. 11-cv-590, 2012 U.S. Dist. LEXIS 106344, *6 (E.D. Wisc. July, 31, 2012).

      **A.**      **All The Evidence Shows That Plaintiff Was Paid For All Hours Worked.**

      Plaintiff recorded her own hours and concedes she was paid for all hours she reported. (Facts ¶ 23, 32, 78; Ex. A/Roberts Dep. 45:19-46:4, 51:7-17, 52:8-15, 58:21-59:5, 60:7-10, 60:15-20, 104:10-16.)  *See Kellar*, 664 F.3d at 178 (summary judgment to defendant where employee wrote in start times for her shift and employer paid in reliance on those times); *Schremp*, 2012 U.S. Dist. LEXIS 106344 at *10 ("[defendant] had no indication Plaintiff was not accurately reporting his time"); *White v. Baptist Memorial Health Care Corp.*, 699 F.3d 869, 876 (6th Cir. 2012) ("if an employer establishes a reasonable process for an employee to report uncompensated work time the employer is not liable for non-payment if the employee fails to follow the established process").  Pursuant to Advocate's policies, Plaintiff punched in at the beginning and end of her shift, respectively, to record all hours worked and used the "no lunch" code to record time when she missed or was interrupted during a meal break.  (Facts ¶¶ 22, 23, 32; Ex. A/Roberts Dep. 44:10-19; 45:15-18, 45:19-46:4, 50:1-10; 51:7-17.)  When Plaintiff was not punched in for any reason while performing work, she submitted payroll adjustment forms, in which she notified Advocate of additional hours worked.  (Facts ¶ 34, 36, 37; Ex. A/Roberts Dep. 65:18-66:1, 66:7-17, 67:5-19, 71:16-21; 74:13-16; Ex. B/Magurany Dep. 70:2-7, 71:4-12; Ex. C/Kittle Dep. 80:21-81:9; Ex. F/Roberts Dep. Ex. 2.)  For example, Plaintiff submitted a payroll adjustment form for a two-week period in which she made no less than five separate

- 6 -

adjustments to her time. (Facts ¶ 36; Ex. A/Roberts Dep. 66:7-17; Ex. F/Roberts Dep. Ex. 2.) In addition, Plaintiff was responsible for assisting other employees with following these procedures. (Facts ¶¶ 11, 12; Ex. A/Roberts Dep. 130:1-21, 131:18-24, 132:23-133:9; Ex. I/Roberts Dep. Ex. 13.) Plaintiff, however, never submitted any adjustment forms or otherwise requested adjustments for the 8-12 hours each week that she now claims she worked. (Facts ¶ 34, 38, 40, 44, 77; Ex. A/Roberts Dep. 51:18-24, 52:19-53:2, 63:4-6, 64:16-21, 64:10-15, 65:14-17, 76:14-22, 77:1-12, 78:5-79:5, 128:13-19.) That Plaintiff knew how to and did get credit for work she performed after punching out—and in fact helped others get paid for their time—discredits her claims in this lawsuit that she chose not to get credit for other work. *See Kellar*, 664 F.3d at 178 ("[Plaintiff's] behavior raised no flags. When [plaintiff] forgot to punch in, she would simply write in her time card that she arrived at the beginning of her scheduled shift to work."); *Joiner v. Bd. of Trustees of Flavius J. Witham Mem'l Hosp.*, 1:13-CV-555-WTL-DKL, 2014 WL 3543481 at *6 (S.D. Ind. July 17, 2014) (summary judgment for employer where plaintiff failed to follow company's procedure for reporting timecard errors with respect to his off-the-clock claims, yet followed the company's procedure for other timecard changes.)

Plaintiff claims she "forgot" or was too "busy" to adjust her hours to reflect this time, but Advocate cannot be held liable for time Plaintiff allegedly "forgot" to record. (Facts ¶ 34, 41, 42, 43; Ex. A/Roberts Dep. 50:11-21, 51:18-52:7, 52:1-7, 52:19-53:2, 78:5-79:5.) *See Albee v. Village of Bartlett,* 861 F. Supp. 680, 686 n.14 (N.D. Ill. 1994) (where employees said they forgot or were too busy to report overtime the court explained "[defendant] cannot be faulted for the manner in which such choices may have been exercised by individual personnel on their own"). Further, Plaintiff claims that she worked an additional 8-12 hours of overtime even on the weeks for which she submitted a payroll adjustment form *that did not include those 8-12*

*hours.* (Facts ¶¶ 31, 38; Ex. A/Roberts Dep. 76:14-22; 77:1-12, 82:11-19; 83:17-84:7.)

Plaintiff's claim of working 8-12 additional hours even on those weeks is inconsistent with her

explanation that she did not record this time because she "forgot" every week. *See Bjornson,* 12

F. Supp. 2d at 842 ("[Plaintiff's] post hoc deposition testimony, which is directly at war with his

own actual conduct and recordkeeping, has not…created a genuine factual issue…").

Plaintiff claims she failed to record overtime "that probably would add up to 8 to 12

hours per week," but it is undisputed that she regularly recorded overtime. (Facts ¶¶ 25, 26, 27,

28, 29, 30, 69, 70; Ex. A/Roberts Dep. 7:19-23, 11:4-20, 12:2-5; Ex. D/Magurany Decl. Ex. 1.)

In fact, Plaintiff recorded overtime in 70 of the 113 weeks during the statutory period—for a

total of 331 hours of overtime. (Facts ¶ 30; Ex. D/Magurany Decl. Ex. 1, Plaintiff's Pay Stubs.)

In 19 of those weeks, her overtime exceeded six hours. (Facts ¶ 27; Ex. D/Magurany Decl. Ex.

1, Plaintiff's Pay Stubs.) *See, e.g. Bjornson*, 12 F. Supp. 2d at 840 ("[plaintiff's] alleged

reluctance to submit overtime claims is flatly belied by his own demonstrated willingness and

ability to do exactly that"); *Golden*, 884 F. Supp. 2d at 700.

Further, the amount of Plaintiff's recorded overtime, combined with her on-call time

makes a claim for an additional 8-12 hours of work, logistically untenable. For example, in one

two-week pay period, Plaintiff received pay for 80 hours of regular time, 32.68 hours of

overtime, and 77.78 hours of on-call time for a total of 190 hours, but Plaintiff still claims she

worked an additional 16-24 hours of unpaid work. (Facts ¶ 31; Ex. A/Roberts Dep. 80:6-81:6,

82:11-19; 83:17-84:7; Ex. G/Roberts Dep. Ex. 3.) Plaintiff often recorded 40 hours straight time,

5 hours of overtime, and 15-25 hours of on-call time in a week. (Facts ¶ 19, 25, 26, 27, 28; Ex.

A/Roberts Dep. 13:10-15; Ex. D/Magurany Decl. Ex. 1.) The numbers simply do not add up.

**B.      Plaintiff Cannot Show The Amount Or Extent Of Off-The-Clock Work.**

Plaintiff also conceded at her deposition that there is nothing she can look at to help her

determine the amount of her alleged unrecorded work, explaining "I can't break it down, but I do know it was about 8 to 12 per week." (Facts ¶ 70, 71, 74; Ex. A/Roberts Dep. 7:19-23, 8:8-9:8, 10:10-23, 11:4-12, 48:14-23, 63:13-64:12, 84:8-18, 107:1-9.) *See Schremp*, 2012 U.S. Dist. LEXIS 106344, *10 ("A mere averment of hours worked does not constitute definite and certain evidence of hours worked."). Plaintiff described the alleged uncompensated work as follows: "if I was called or paged or text during my lunch, if I was called before my scheduled work time, if I was called or paged after my scheduled work time, that probably would add up to 8 to 12 hours per week." (Facts ¶ 73; Ex. A/Roberts Dep. 11:13-20.) She also claimed that after clocking out, "[she'd] be called into [Ms. Magurany's] office and [they] would discuss the next day's work plan." (Facts ¶76; Ex. A/Roberts Dep. 56:8-19.) Plaintiff clarified that she is not claiming she performed any uncompensated work by way of emails outside of work hours. (Facts ¶ 75; Ex. A/Roberts Dep. 151:7-19.) Each of Plaintiffs' purported sources of uncompensated work is not only insufficiently vague, but also fatally flawed.

For example, Plaintiff's claims of constant paging are belied by the pager records. *See Turner*, 595 F.3d at 690 (dismissing plaintiff's wage claims where they were "flatly refuted by the hard evidence proffered by [defendant]"). Advocate produced all available pager records for Plaintiff's pager, which included 21 months of the roughly 27 month statutory period. (Facts ¶ 45; Ex. E/ LaFargue Decl. at ¶ 6.) The data simply does not support Plaintiff's claims that she was regularly paged. In fact, the records show that Plaintiff received an average of only ten pages per month. (Facts ¶ 46; Ex. E/LaFargue Decl. Ex. 2-28.) In only four of those 21 months did Plaintiff receive more than 12 pages. (Facts ¶¶ 58, 61, 64, 66; Ex. E/LaFargue Decl. Ex. 19, 22, 24, 27.) Most important, of the 209 pages Plaintiff received during this period, 185 were during Plaintiff's clocked in or on-call time. (Facts ¶ 46; Ex. E/LaFargue Decl. Ex. 2-28; Ex.

D/Magurany Decl. Ex. 2.)  In nine of the months for which data was available, Plaintiff received

no pages outside of the time she was clocked in or on-call.  (Facts ¶¶ 48, 49, 52, 54, 63, 64, 65,

67, 68; Ex. E/LaFargue Decl. Ex. 8, 9, 12, 14, 23, 24, 25, 27, 28.)  In eight of the months,

Plaintiff received only one or two messages outside of her clocked in or on-call time.  (Facts

¶¶ 51, 53, 55, 57, 58, 61, 62, 66; Ex. E/LaFargue Decl. Ex. 11, 13, 15, 17, 18, 21, 22, 26.)  In the

other four months, Plaintiff received between three to five messages outside of her clocked in or

on-call time.  (Facts ¶ 50, 56, 59, 60; Ex. E/LaFargue Decl. Ex. 10, 16, 19, 20.)  In addition,

Plaintiff's manager instructed Plaintiff and other team members to "turn their pagers off if they

are off hours."  (Facts ¶ 16; Ex. B/Magurany Dep. 85:9-22.).

Neither does the fact that Plaintiff carried a pager during her lunch breaks make these

periods compensable.  An employee's meal periods are compensable hours worked only when

such time is predominantly for the benefit of the employer.  *See In re Chicago Police Dep't*

*F.L.S.A. Meal Period Litig.,* Case Nos. 89C9354, 90C7294, 92C667, 94C2237, 1995 U.S. Dist.

LEXIS 4006, *22 (N.D. Ill. March 30, 1995) (granting summary judgment where interruptions

"could only last a few minutes, and…occur on the average only between 30-40% of the time.");

*Albee,* 861 F. Supp. at 685 (granting summary judgment where emergencies occurred "only a

few times a month.").  Plaintiff was required to respond to pages during her meal period only in

emergencies. (Facts ¶¶ 14, 15; Ex. B/Magurany Dep. 27:17-28:15, 35:8-17; Ex. C/Kittle Dep.

47:20-24.)  Barring a cardiac alert emergency, Plaintiff was free to take her break wherever she

would like and even leave the work premises.  (Facts ¶ 15, 21; Ex. A/Roberts Dep. 46:5-10; Ex.

B/Magurany Dep. 35:8-17, 68:3-15; Ex. C/Kittle Dep. 47:20-24, 80:8-20.)  Plaintiff received

only four pages reporting a cardiac alert emergency during the 21 months of pager data.  (Facts

¶ 68; Ex. E/LaFargue Decl. Ex. 15, 16, 17, 19.)  In fact, Plaintiff received an average of only ten

pages a month total, most of which were non-emergent, did not occur during Plaintiff's lunch, and required no immediate response. (Facts ¶ 46, 68; Ex. E/LaFargue Decl. Ex. 2-28, Plaintiff's Pager Data.) These occasional incidents and the fact that Plaintiff was free to engage in personal pursuits during her break, preclude a finding that her lunch periods were "predominantly for the benefit of the employer." *See, e.g. Albee,* 861 F. Supp. at 685.

In addition, Plaintiff failed to produce her personal cell phone records for the statutory period. (Facts ¶ 74; Ex. A/Roberts Dep. 107:1-9.) The phone that Plaintiff carried as a team lead worked only on Advocate's premises, and given that Plaintiff could not take it home, there is no way it could have accounted for any additional work off premises. (Facts ¶ 17; Ex. A/Roberts Dep. 105:4-7; Ex. B/Magurany Dep. 43:1-15.) In any event, Plaintiff could not recall a single specific instance of being called outside of her work hours and cannot estimate what portion of her alleged overtime is comprised of these alleged phone calls. (Facts ¶ 71; Ex. A/Roberts Dep. 7:19-23; 8:8-9:8; 10:10-23; 48:14-23; 63:13-64:12, 84:8-18.)

Plaintiff also offers no specifics about her alleged conversations with Ms. Magurany. *See Golden*, 884 F. Supp. 2d at 701 (summary judgment for employer where plaintiffs' affidavits did not indicate how the estimates of unpaid time were made); *Gatto v. Mortgage Specialists of Ill., Inc.,* 442 F.Supp. 2d 529 (N.D. Ill. 2006) (summary judgment to defendants where plaintiff submitted an affidavit claiming that she worked overtime "nearly every week" without additional evidence); *Seever v. Carrols Corp.,* 528 F. Supp. 2d 159, 170 (W.D.N.Y. 2007) (granting summary judgment where plaintiffs' claims of off-the-clock work were "supported by the testimony of plaintiffs themselves, comprised largely of nebulous recollections…"). Plaintiff cannot provide any specific dates when these alleged conversations took place. Any estimate Plaintiff provides is not based on any records, but just her belief that the conversations occurred

- 11 -

"frequently." (Facts ¶ 76; Ex. A/Roberts Dep. 62:19-63:1.) Moreover, during Plaintiff's tenure,

Ms. Magurany supervised 45 to 50 employees in different departments, all over the hospital.

(Facts ¶ 6; Ex. B/Magurany Dep. 17:19-18:10.) The idea that four times a week she happened to

be in the Cath Lab as Plaintiff was leaving renders Plaintiff's unsupported allegations untenable.

## II. PLAINTIFF CANNOT OFFER ANY EVIDENCE THAT ADVOCATE KNEW OR SHOULD HAVE KNOWN OF HER ALLEGED OFF-THE-CLOCK WORK.

Even if Plaintiff could meet her burden of showing that she actually performed

uncompensated work, she still would raise no issue for trial because she cannot demonstrate

Advocate knew anything about it. To demonstrate employer liability for unpaid wages under the

FLSA and the IMWL, Plaintiff must show that Advocate had "actual or constructive knowledge

of her overtime work." *Kellar*, 664 F.3d at 177 ("the FLSA stops short of requiring the employer

to pay for work it did not know about, and had no reason to know about."); *see also Gaines,* 742

F.3d at 271 (finding no liability for employer where plaintiff "offers no evidence that…he told

anyone that he was working unauthorized overtime."). "Where an employee fails to notify the

employer or deliberately prevents the employer from acquiring knowledge of the overtime work,

the employer's failure to pay for the overtime hours is not a violation of [the FLSA]." *Harvill v.*

*Westward Commc'n, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005). Thus, where an employee

records their own time and "elects to under-report his or her work time the employer is not liable

for the failure to pay unreported overtime under the FLSA." *Schremp.,* 2012 U.S. Dist. LEXIS

106344 at *8 (no liability for employer where it "had no reason to suspect Plaintiff was not

accurately reporting his time" and employee sometimes reported overtime); *see also Bjornson,*

12 F. Supp. 2d at 842 (employer had no knowledge where "[plaintiff] admits not only that he

failed to record or submit his hours, but also that he never otherwise informed [defendant's]

management directly of his extra work.").

- 12 -

Advocate's policies required Plaintiff to accurately record all hours worked each day and each week. (Facts ¶ 32, 33, 34; Ex. A/Roberts Dep. 45:19-46:4, 64:22-65:13, 65:18-66:1; Ex. B/Magurany Dep. 70:2-7, 71:4-12; Ex. C/Kittle Dep. 80:21-81:9.) She concedes she understood those policies. (Facts ¶¶ 11, 22, 23; Ex. A/Roberts Dep. 44:10-19, 45:15-18, 50:4-10, 131:18-24, 132:23-133:9.) There also is no dispute that when Plaintiff followed the policies, she was paid for all hours recorded, including significant overtime. (Facts ¶¶ 25, 26, 27, 28, 29, 30; Ex. A/Roberts Dep. 12:2-5; Ex. D/Magurany Decl. Ex. 1.) Indeed, undercutting any claim that she would not be paid for interrupted lunches, Plaintiff testified that on the occasions that she utilized the "no lunch" code, she received full compensation for her missed or interrupted meal break. (Facts ¶ 23; Ex. A/Roberts Dep. 51:7-17, 52:8-15.) She also explained that when she sought additional compensation by way of payment adjustment forms, she received pay for all time she reported. (Facts ¶ 36; Ex. A/Roberts Dep. 67:20-68:2; 76:1-13.) She now claims that she "forgot" or was too "busy" to record an additional 8-12 hours each week (Facts ¶ 34, 41, 42, 43; Ex. A/Roberts Dep. 50:11-21, 51:18-52:7, 52:19-53:2, 78:5-79:5) but even if she could prove that she worked those hours, she is not entitled to compensation for work she "forgot" to record under Advocate's well-established policies. *Kellar*, 664 F.3d at 177.

*Kellar* is instructive. There, as here, the plaintiff managed other employees on the job yet did not record her own alleged overtime on her payroll records and did not otherwise tell her supervisors. 664 F.3d at 178. The court found that defendants had no knowledge of alleged pre-shift work where "[defendants] had little reason to know, or even suspect, [plaintiff] was acting in direct contradiction of a company policy and practice that she herself was partially responsible for enforcing." *Id.* Plaintiff had a leadership position in the Cath Lab and was responsible for scheduling employee lunches and facilitating adjustments to employees' time when requested.

- 13 -

(Facts ¶¶ 10, 11, 12; Ex. A/Roberts Dep. 40:3-7, 130:1-21, 131:18-24; 132:23-133:9; Ex. I/Roberts Dep. Ex. 13.) Yet despite her familiarity with Advocate's policies on ensuring payment for time worked, Plaintiff did not submit any "no lunch" codes, adjustment requests, or otherwise notify Advocate of the work she now alleges she did. (Facts ¶¶ 34, 38, 41, 42, 43, 44, 77; Ex. A/Roberts Dep. 50:11-21, 51:18-52:7, 52:19-53:2, 64:10-15, 66:7-17, 76:14-22, 77:1-12, 78:5-79:5, 128:13-19; Ex. F/Roberts Dep. Ex. 2.) Similar to *Kellar*, the fact that Plaintiff was in a leadership role and did in fact report significant overtime for which she was paid would have given her manager little reason to suspect that she was not reporting the appropriate amount of overtime. *See Kellar*, 664 F.3d at 178. *See also Boelk v. AT&T Teleholdings, Inc.*, No. 12-cv-40-bcc, 2013 U.S. Dist. LEXIS 101111, *20 (W.D. Wisc. July 19, 2013) ("[b]y failing to record their hours accurately and failing to tell their supervisors or managers about lunch break work, plaintiffs prevented defendants from having actual knowledge of their off the clock work.")

In addition, Plaintiff's alleged uncompensated work comes from time Plaintiff claims she was paged or called when outside of the hospital or on lunch breaks. (Facts ¶¶ 72, 73, 78; Dkt. 1/Complaint at ¶ 13; Ex.A/Roberts Dep. 11:13-20, 58:21-59:5, 60:15-20, 60:7-10, 104:10-16.) Plaintiff's supervisor had no way to know if Plaintiff was working during this time, and if so, whether she recorded it. *See Gaines*, 742 F.3d at 270-271 (no issue of material fact on employer's knowledge where there was no evidence that anyone saw plaintiff working or knew when he was scheduled to start). And in fact, Plaintiff admits that she did not adjust her time to reflect any of the work she now claims she performed. (Facts ¶¶ 34, 38, 41, 42, 43, 44, 77; Ex. A/Roberts Dep. 50:11-21, 51:18-52:7, 52:19-53:2, 64:10-15, 66:7-17, 76:14-22; 77:1-12, 78:5-79:5, 128:13-19; Ex. F/Roberts Dep. Ex. 2.) As to the alleged conversations with Ms. Magurany, Plaintiff repeatedly admits that she never told Ms. Magurany that she was clocked out during

- 14 -

these conversations.  (Facts ¶ 77; Ex. A/Roberts Dep. 63:4-6; 64:16-21.)  *See Gaines*, 742 F.3d at 270 (summary judgment where plaintiff's supervisor saw him arrive early but there was no evidence that the supervisor knew plaintiff was not being compensated).  She also admits that she never made any efforts to receive payment for this time, though as Plaintiff explained, she could have adjusted her clock out time in the system the next morning or filled out a payroll adjustment form.  (Facts ¶ 44, 77; Ex. A/Roberts Dep. 64:10-15, 64:10-15; 65:14-17, 128:13-19.) *See White*, 699 F.3d at 876 (employee failed to follow defendant's "reasonable process" for reporting uncompensated time); *Seever*, 528 F. Supp. 2d at 170.  There is no evidence that Advocate had actual or constructive knowledge of Plaintiff's alleged overtime work and for this reason too, Advocate is entitled to summary judgment on Plaintiff's claims.

Plaintiff's admissions—*first*, that she did not record the time she now alleges she worked because she "forgot" or was "busy" and *second*, that she failed to notify Advocate of this alleged work render her FLSA and IMWL claims "worthless," and as such, her continued litigation demonstrates bad faith.  *C.f. Mach v. Will County Sheriff*, 580 F.3d 495, 501 (7th Cir. 2009) (affirming fees to prevailing defendant where ADEA case litigated in bad faith where five of six arguments were "worthless.").

## CONCLUSION

Accordingly, Advocate requests summary judgment be entered in its favor on all claims.

Dated: October  31, 2014                    Respectfully submitted,

                                            s/Efrat R. Schulman
                                            _____
                                            Michael J. Gray (06210880)
                                            mjgray@JonesDay.com
                                            Efrat R. Schulman (06280999)
                                            eschulman@jonesday.com
                                            JONES DAY
                                            77 West Wacker
                                            Chicago, IL  60601.1692
                                            Telephone:    +1.312.782.3939

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of October, the foregoing Defendant's Memorandum Of Law In Support Of Its Motion For Summary Judgment was filed using the Court's CM/ECF system, which will serve electronic notification to all attorneys of record.


s/ Efrat R. Schulman
*Attorney for Defendant*